**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ELISIO ATENIA LORENZO,
*Petitioner*,

v.

JEFFERSON B. SESSIONS III, Attorney
General,
*Respondent.*

No. 15-70814

Agency No.
A038-467-916

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 15, 2018
Pasadena, California

Filed August 29, 2018

Before: Sidney R. Thomas, Chief Judge, and Raymond C.
Fisher and Carlos T. Bea, Circuit Judges.[*]

Opinion by Judge Fisher

---

[*] This case was submitted to a panel that included Judge Stephen
Reinhardt. Following Judge Reinhardt's death, Judge Bea was drawn by
lot to replace him. Ninth Circuit General Order 3.2h. Judge Bea has
reviewed all case materials.

## SUMMARY**

### Immigration

The panel granted Elisio Atenia Lorenzo's petition for review of a decision of the Board of Immigration Appeals that found Lorenzo removable for a controlled substance offense, holding that: 1) where a state statute contains two layers of disjunctive lists, the analysis outlined in *Taylor v. United States*, 495 U.S. 575 (1990), for applying the categorical approach, applies to both layers of the statute and must be performed twice; and 2) a methamphetamine conviction under California Health & Safety Code §§ 11378 or 11379(a) does not qualify as a controlled substance offense under 8 U.S.C. § 1227(a)(2)(B)(i), and remanded.

The panel explained that § 11378 makes it unlawful to possess for sale a controlled substance specified in certain subdivisions of California Health & Safety Code § 11055, and that § 11379(a) makes it unlawful to transport, import, sell, furnish, administer, or give away a controlled substance specified in certain subdivisions of § 11055. Section 11055, in turn, identifies a list of substances, including methamphetamine and its isomers. The Controlled Substances Act likewise includes methamphetamine and its isomers.

However, the panel concluded that the California definition of methamphetamine is broader than the federal definition because the California definition includes both

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

geometric and optical isomers of methamphetamine, while the CSA includes optical isomers, but not geometric isomers. Accordingly, the panel held that the California definition is overbroad under the first step of the categorical approach.

The panel recognized that, in applying the first step of the categorical approach in this case, it had to examine a disjunctive list within another disjunctive list. The panel explained that it was therefore not enough to conclude, as this court had in *United States v. Martinez-Lopez*, 864 F.3d 1034 (9th Cir. 2017) (en banc), that California's disjunctive list of controlled substances is overbroad but divisible. Rather, in this instance, another *Taylor* analysis – addressing whether California's disjunctive list of types of methamphetamine is overbroad and, if so, divisible – was also required.

Next, the panel held that the overbroad methamphetamine element of §§ 11378 and 11379(a) is not divisible, observing that, under California law, geometric and optical isomers of methamphetamine are alternative means of committing a single offense, not alternative elements of committing several offenses.

Having concluded that the California statute is overbroad and not divisible with respect to the overbroad element, the panel explained it could not apply the modified categorical approach to determine whether Lorenzo's convictions involved a type of methamphetamine covered by the CSA. As a result, the panel concluded that Lorenzo's convictions under §§ 11378 and 11379(a) do not qualify as controlled substance offenses that render him removable under 8 U.S.C. § 1227(a)(2)(B)(i).

Because the immigration judge and BIA did not address whether Lorenzo was removable on the ground that his § 11379(a) conviction constitutes an illicit trafficking aggravated felony, the panel did not address that question. However, the panel noted that, if the BIA addresses the government's aggravated felony theory on remand, it should consider whether that theory suffers from the same flaw as the government's theory of removability under 8 U.S.C. § 1227(a)(2)(B)(i).

**COUNSEL**

Benjamin F. Aiken (argued), Orrick Herrington & Sutcliffe LLP, Washington, D.C.; Cathy C. Shyong, Orrick Herrington & Sutcliffe LLP, Menlo Park, California; Karen Johnson-McKewan, Orrick Herrington & Sutcliffe LLP, San Francisco, California; for Petitioner.

Scott G. Stewart (argued), Washington, D.C., for Respondent.

**OPINION**

FISHER, Circuit Judge:

This case raises a novel yet straightforward question in our application of *Taylor v. United States*, 495 U.S. 575 (1990): whether the *Taylor* analysis must be performed twice if a state statute contains two layers of disjunctive lists. We hold *Taylor* applies to both layers of the statute. Following this approach, we conclude the definition of "methamphetamine" applicable to convictions under California Health & Safety Code §§ 11378 and 11379(a) is

broader than the definition of methamphetamine under the federal Controlled Substances Act, 21 U.S.C. § 812. Under the first step in the categorical approach, therefore, a conviction for a methamphetamine offense under §§ 11378 or 11379(a) does not qualify as a "controlled substance" violation under 8 U.S.C. § 1227(a)(2)(B)(i). We further conclude the methamphetamine element applicable to a conviction under §§ 11378 or 11379(a) is not divisible, because the different varieties of methamphetamine covered by California law are alternative means of committing a single crime rather than alternative elements of separate crimes. We therefore do not apply the modified categorical approach. Because the methamphetamine element of §§ 11378 and 11379(a) is overbroad and the modified categorical approach does not apply, we hold a methamphetamine conviction under §§ 11378 or 11379(a) does not qualify as a controlled substance offense under 8 U.S.C. § 1227(a)(2)(B)(i). Accordingly, we hold Lorenzo is not removable for the reasons stated by the BIA.[1]

## I.

Lorenzo, a native and citizen of the Philippines, entered the United States in 1983 and has lived in this country as a lawful permanent resident since that time. In 2013, he pled nolo contendere to possession of methamphetamine, in violation of § 11378, and transportation of methamphetamine, in violation of § 11379(a). The record of conviction does not identify the type of methamphetamine involved, and, under California law, "methamphetamine" is broadly defined to include "[m]ethamphetamine, its salts,

---

[1] Unless otherwise noted, all further statutory citations are to the California Health and Safety Code.

isomers, and salts of its isomers." § 11055(d)(2). Lorenzo was sentenced to a year in jail and probation.

The Department of Homeland Security initiated removal proceedings against Lorenzo because of his 2013 state convictions. The notice to appear charged Lorenzo with removability under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii), on the ground that his § 11379(a) conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(B), which defines the term "aggravated felony" to include, among other things, "illicit trafficking in a controlled substance, including a drug trafficking crime." Alternatively, and as relevant here, the notice to appear charged Lorenzo with removability under § 237(a)(2)(B)(i) of the INA, 8 U.S.C. § 1227(a)(2)(B)(i), on the ground that his §§ 11378 and 11379(a) convictions constituted violations of state law "relating to a controlled substance."

Lorenzo moved to terminate removal proceedings, contending his methamphetamine convictions did not necessarily involve a controlled substance as defined by federal law. Specifically, he argued the definition of methamphetamine under California law is broader than the definition of methamphetamine under the federal Controlled Substances Act (CSA), because the CSA's definition includes only optical isomers of methamphetamine, whereas California law includes both optical and geometric isomers of methamphetamine.

An immigration judge (IJ) denied Lorenzo's motion and ordered him removed, concluding that Lorenzo's convictions qualified as controlled substance offenses under 8 U.S.C. § 1227(a)(2)(B)(i). The BIA adopted and affirmed the IJ's decision under *Matter of Burbano*, 20 I. & N. Dec.

872 (BIA 1994), while also providing its own analysis. Lorenzo timely petitioned for review.

## II.

We review the BIA's determination of purely legal questions de novo, *see Vasquez-Zavala v. Ashcroft*, 324 F.3d 1105, 1107 (9th Cir. 2003), including whether a particular conviction under state law is a removable offense, *see Arellano Hernandez v. Lynch*, 831 F.3d 1127, 1130 (9th Cir. 2016), and whether a statute is divisible, *see United States v. Martinez-Lopez*, 864 F.3d 1034, 1039–40 (9th Cir. 2017) (en banc) (citing *Almanza-Arenas v. Lynch*, 815 F.3d 469, 477 (9th Cir. 2016) (en banc)).

## III.

We hold Lorenzo's methamphetamine convictions under §§ 11378 and 11379(a) do not qualify as grounds for removal under 8 U.S.C. § 1227(a)(2)(B)(i).

## A.

We use "a three-step analysis" to determine whether a state conviction qualifies as a controlled substance offense under federal law. *See Martinez-Lopez*, 864 F.3d at 1038. First, we determine whether state law bars "the same amount of or less conduct than" federal law. *Id*. (quoting *United States v. Hernandez*, 769 F.3d 1059, 1062 (9th Cir. 2014)). If so, then the state conviction is a categorical match, and the state conviction is a ground for removability. *See id.* If the state law encompasses more conduct than the federal law, however, the state conviction does not qualify as a controlled substance offense under the first step in the categorical approach. In that case, we determine whether the state law is divisible – i.e., whether the overly broad element sets out

alternative means of committing a single crime or alternative elements of committing two or more distinct crimes. *See id.* at 1038–39. At step three, if the statute is divisible, we employ the modified categorical approach, where we may look to documents in the record of conviction, but not the particular facts underlying the conviction, to determine whether the conviction qualifies. *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). If the statute is overbroad and not divisible, then the conviction cannot be a ground for removal. *See id.* at 2248–49.

**B.**

We begin by applying the first step in the categorical approach, determining whether the statutes of conviction are broader than federal law.

Section 11378 makes it a crime to "possess[] for sale a controlled substance that . . . is specified in subdivision (d), (e), or (f) . . . of Section 11055." Section 11379(a) makes it unlawful to "transport[], import[] into this state, sell[], furnish[], administer[], or give[] away . . . any controlled substance which is . . . specified in subdivision (d) or (e) . . . of Section 11055." Section 11055, in turn, identifies a list of Schedule II substances, including, as relevant here, "[m]ethamphetamine, its salts, isomers, and salts of its isomers." § 11055(d)(2). Section 11033 further provides that the term "isomer," unless otherwise defined, "includes optical and geometrical (diastereomeric) isomers." Thus, under California law, a methamphetamine conviction under §§ 11378 or 11379(a) may involve methamphetamine or it may involve methamphetamine's "salts, isomers, [or] salts of its isomers," including both "optical and geometrical . . . isomers."

The CSA likewise applies to "[a]ny substance" that "contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers." 21 U.S.C. § 812 Schedule II(c), Schedule III(a)(3). With respect to methamphetamine, however, the CSA applies only to optical isomers, not geometric isomers.

Under 21 U.S.C. § 802(14):

> The term "isomer" means the optical isomer, except as used in schedule I(c) and schedule II(a)(4). As used in schedule I(c), the term "isomer" means any optical, positional, or geometric isomer. As used in schedule II(a)(4), the term "isomer" means any optical or geometric isomer.

Methamphetamine falls under Schedules II(c) ("any injectable liquid which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers") and III(a)(3) ("Any substance (except an injectable liquid) which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers."). Thus, for purposes of methamphetamine, the CSA covers only optical isomers. Federal law extends to geometric isomers with respect to substances listed on Schedules I(c) and II(a)(4), but methamphetamine is not included on those schedules.

We have no reason to believe that these distinctions between California and federal law are immaterial. Both California law and federal law go to great lengths to specify the types of isomers covered for specific controlled substances. California law, for example, carefully specifies the controlled substances for which isomers are covered at all. These substances are opiates; opium derivatives;

hallucinogenic substances, such as cannabis, peyote and psilocybin; depressants; cocaine base; opium; ecgonine; stimulants, such as amphetamine and methamphetamine; dimethylamphetamine; N-ethylmethamphetamine; gamma hydroxybutyric acid; and fenfluramine. *See* §§ 11054(b), (c), (d), (e), (f), 11055(b)(1)–(2), (b)(7), (c), (d)(1), (d)(2), (d)(3), (d)(4), (e), 11056(b), (c)(11), 11057(d), (e), (f).

Next, like federal law, California law carefully specifies the *types* of isomers covered for each controlled substance. Under California's default rule, both optical and geometric isomers are covered. *See* § 11033. But, like federal law, the California statutes specify exceptions to the default rule. Section 11054(d), relating to hallucinogenic substances, for instance, expands the default definition, stating that, "for purposes of this subdivision only, the term 'isomer' includes the optical, position, and geometric isomers." *See also* §§ 11056(b) (stimulants) (including "isomers (whether optical, position, or geometric)"), 11057(e) (fenfluramine) (same), (f) (stimulants) (same). Other provisions narrow the default definition, specifying that only optical isomers are included. *E.g.*, §§ 11054(d)(20) (including "delta 1 cis or trans tetrahydrocannabinol, and their optical isomers; delta 6 cis or trans tetrahydrocannabinol, and their optical isomers; delta 3,4 cis or trans tetrahydrocannabinol, and its optical isomers"), 11055(d)(1) ("Amphetamine, its salts, optical isomers, and salts of its optical isomers.").**[2]** In short, both

---

**[2]** A comparison of California's statutory treatment of amphetamine and methamphetamine is illustrative. These substances are listed immediately next to one another in § 11055(d), but with respect to amphetamine, only optical isomers are specified. *Compare* § 11055(d)(1) ("Amphetamine, its salts, *optical* isomers, and salts of its *optical* isomers." (emphasis added)), *with* § 11055(d)(2) ("Methamphetamine, its salts, isomers, and salts of its isomers.").

California law and federal law carefully identify the types of isomers included for various controlled substances. California law includes geometric isomers of methamphetamine, but federal law does not.[3]

On its face, therefore, the California definition of methamphetamine is broader than the federal definition. Whereas the former includes geometric isomers of methamphetamine, the CSA does not. Accordingly, California law is facially overbroad under the first step in the categorical approach. *See Martinez-Lopez*, 864 F.3d at 1038.

The government challenges this conclusion on two grounds, neither of which is persuasive. First, the government contends Lorenzo waived this issue by failing to raise it in his opening brief before this court. Lorenzo's opening brief, however, plainly argued that California law is overbroad because it "prohibits both optical and geometric isomers of all listed controlled substances," whereas the CSA "punishes the possession of optical isomers alone." The government's waiver argument, therefore, is without merit.

Second, the government argues Lorenzo's convictions qualify as controlled substance offenses in light of *United States v. Vega-Ortiz*, 822 F.3d 1031 (9th Cir. 2016). There, the defendant argued that California law was broader than federal law because federal law contains a provision requiring the Attorney General to exclude from the CSA's

---

[3] The record does not tell us *why* California has elected to include geometric isomers with respect to a broader range of controlled substances than the CSA, but it has done so. In the absence of any evidence – either in the record or subject to judicial notice – to suggest that this distinction is not material, we must assume that it is.

controlled substance schedules certain non-narcotic substances that are lawfully sold over the counter, without a prescription, under the federal Food, Drug, and Cosmetic Act. *See* 21 U.S.C. § 811(g)(1). In accordance with this statutory requirement, the Attorney General has promulgated 21 C.F.R. § 1308.22, which excludes 17 over-the-counter pharmaceutical products from the CSA schedules, including Levmetamfetamine (l-Desoxyephedrine), or "L-meth," a substance used in a nasal decongestant produced by Aphena Pharma and in Vicks VapoInhaler, sold by Procter & Gamble Co. Noting that no similar exceptions apply under California law, the defendant in *Vega-Ortiz* argued California law was "fatally overbroad because it criminalizes methamphetamine in all its forms, including its salts, isomers, and salts of its isomers without containing an exception for pharmaceutical products that contain 'L-meth,' although federal law excludes a particular product containing L-meth." *Vega-Ortiz*, 822 F.3d at 1034.

We rejected the defendant's argument:

> Vega-Ortiz . . . maintains that the federal regulation excluding a particular product containing L-meth from the schedule of federal controlled substances renders California's definition of methamphetamine broader than the definition of controlled substances in the Controlled Substances Act. However, in addressing a similar argument regarding an exemption for "administering" controlled substances that existed under federal law but not Washington state law, we focused on whether the defendant showed a "realistic probability" that a person would be prosecuted for the offense that assertedly

rendered the state statute overbroad. *United States v. Burgos-Ortega*, 777 F.3d 1047, 1054–55 (9th Cir. 2015); *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) ("[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires . . . a realistic probability . . . that the state would apply its statute to conduct that falls outside the generic definition of a crime. . . ."). Applying this analysis to the facts here, to succeed on his claim Vega-Ortiz would need to show a "realistic probability" that he would be prosecuted under § 11378 for possession of the excluded product containing L-meth. *Burgos-Ortega*, 777 F.3d at 1054. He has failed to do so. As in *Burgos-Ortega*, § 11378 is not "overbroad on its face" and "does not expressly include conduct not covered by the generic offense, but rather is silent as to the existence of a parallel [L-meth] exception." 777 F.3d at 1055. Thus, Vega-Ortiz's overbreadth arguments are unavailing, and we conclude that the district court properly applied the modified categorical approach to § 11378.

*Id.* at 1035–36 (first alteration added).

The government's reliance on *Vega-Ortiz* is misplaced. *Vega-Ortiz* expressly distinguished a case, such as this one, in which the California statute is overbroad *on its face*. "Where, as here, a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination,' is required to hold that a realistic probability

exists that the state will apply its statute to conduct that falls outside the generic definition of the crime. The state statute's greater breadth is evident from its text." *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) (citation omitted). "[W]hen '[t]he state statute's greater breadth is evident from its text,' a defendant may rely on the statutory language to establish the statute as overly inclusive." *United States v. Vidal*, 504 F.3d 1072, 1082 (9th Cir. 2007) (en banc) (citation omitted). Here, because the mismatch between the federal and state statutes is apparent on the face of the statutes, such that no rational interpretation of either statute would reconcile the two, Lorenzo is not required to "point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193.

We similarly reject the reasoning of the IJ and the BIA. The IJ concluded California and federal law were a match under the first step in the categorical approach because geometric isomers of methamphetamine do not exist. The IJ, however, did not substantiate that conclusion, the BIA did not adopt that rationale and the government does not advance a similar argument here. Nor is there evidence in the record to show that geometric isomers of methamphetamine do not in fact exist.

The BIA, in turn, reasoned that, under *Matter of Ferreira*, 26 I. & N. Dec. 415 (BIA 2014),

> to defeat a charge of removability for a controlled substance violation based on a state law that criminalizes substances that may not be within the purview of the CSA, the respondent must present a realistic probability that the state would prosecute

> such conduct.  Here, although queried by the Immigration Judge, the respondent has presented no evidence of any cases in which a particular isomer was isolated for prosecution, rather than the court using the generic term methamphetamine.

But we are not bound by *Ferreira* in this case.  Although *Ferreira*, 26 I. & N. Dec. at 420–21, concluded an individual must point to cases in which the state courts applied the statute of conviction in a nongeneric manner even in the case of a facially overbroad statute, we do not accord deference to that conclusion under either *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), or *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005).  Deference applies under *Chevron* and *Brand X* only "[w]hen a court reviews an agency's construction of the statute which it administers."  *Chevron*, 467 U.S. at 842.  Here, because *Ferreira*'s holding was an interpretation of *Moncrieffe v. Holder*, 569 U.S. 184, 206 (2013), and *Duenas-Alvarez*, 549 U.S. at 193, not an interpretation of the INA, no deference is owed.[4]

We recognize that, in applying the first step in the categorical approach in this case, we have had to examine a disjunctive list within another disjunctive list.  At the more general level, we must examine the disjunctive list of drug

---

[4] The government, moreover, does not ask us to accord deference to *Ferreira* on this question, and other courts have not done so.  *See, e.g.*, *Hylton v. Sessions*, 897 F.3d 57, 64–65 (2d Cir. 2018) (rejecting *Ferreira* without according deference); *Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017) (same); *Vazquez v. Sessions*, 885 F.3d 862, 873–74 (5th Cir. 2018) (agreeing with *Ferreira* without according deference).

types – e.g., cocaine, heroin, methamphetamine – covered by California law. *See Martinez-Lopez*, 864 F.3d at 1040–41 (examining that disjunctive list and concluding that the drug types constitute alternative elements under California law). At the more specific level, however, California law also includes disjunctive lists within a drug type, listing, for example, several types of methamphetamine – methamphetamine, its salts, its optical and geometric isomers, and salts of its isomers. *See* §§ 11033, 11055(d)(2).

Although we may not have expressly addressed this situation before, it is apparent that, when this situation arises, we must conduct a *Taylor* analysis with respect to both disjunctive lists. It is not enough to determine that §§ 11378 and 11379(a) are overbroad and divisible with respect to the types of controlled substances they cover, because the methamphetamine element itself contains a disjunctive list. As a result, the question addressed through the *Taylor* analysis – whether Lorenzo was convicted of possessing or transporting a controlled substance covered under the federal CSA – requires that the *Taylor* analysis be conducted a second time. If California's definition of methamphetamine is broader than the definition under federal law, Lorenzo's convictions related to methamphetamine may not be convictions for a controlled substance under federal immigration law. Concluding, as in *Martinez-Lopez*, that California's disjunctive list of controlled substances is overbroad but divisible is not enough. Another *Taylor* analysis – addressing whether California's disjunctive list of types of methamphetamine is overbroad and, if so, divisible – is required before we can ascertain whether Lorenzo has been convicted of a controlled substance offense covered by the CSA.

**C.**

Having concluded that methamphetamine convictions under §§ 11378 and 11379(a) are overbroad under the first step in the categorical approach, we must consider whether the methamphetamine element of each of these statutes is divisible. That is, we must determine whether the different types of methamphetamine covered by the statutes – including optical and geometric isomers – constitute alternative elements of separate crimes or alternative means of committing a single crime. *See Martinez-Lopez*, 864 F.3d at 1038–39.

We first look to "authoritative sources" in state law for a clear answer as to whether geometric and optical isomers of methamphetamine are alternative elements or alternative means. *See Mathis*, 136 S. Ct. at 2256; *Martinez-Lopez*, 864 F.3d at 1046. If a state court decision "definitively answers the question," we rely on that source. *Mathis*, 136 S. Ct. at 2256.

Here, we have a definitive state law answer: geometric and optical isomers of methamphetamine are alternative means of committing a single offense, not alternative elements of committing several state controlled substance offenses. The methamphetamine element, therefore, is not divisible.

In *People v. Schroeder*, 70 Cal. Rptr. 491, 499 (Ct. App. 1968), the California Court of Appeal explained that possession of different types of the *same* drug – e.g., different types of methamphetamine – "would constitute a single offense" under California law, because the drugs fell within the same classification in the drug schedule, which at that time was codified in Health & Safety Code § 11001. Possession of "[o]pium and its derivatives and compounds,"

for example, constituted a single offense. *Id.* (quoting former § 11001(a)(1)).  So did possession of any type of drug within "[p]henathrene opium alkaloids, their salts, derivatives and compounds . . . morphine alkaloid, morphine salts, morphine compounds, and preparations." *Id.* (quoting former § 11001(b)(1)).  Accordingly, charges for two counts of opium possession and seven counts of phenathrene opium alkaloid possession required consolidation into two counts. *See id.*  The California Supreme Court cited this aspect of *Schroeder* with approval in *In re Adams*, 536 P.2d 473, 477 (Cal. 1975).  Thus, under *Schroeder* and *Adams*, possession of multiple variations of the *same* drug constitutes a single crime under California law.  Different types of methamphetamine, therefore, are alternative means of committing a single controlled substance offense, not alternative elements of distinct offenses.

This conclusion finds additional support in the way methamphetamine convictions are characterized by the California courts.  The courts, for example, characterize a conviction as involving methamphetamine generally even when it may actually involve crystal methamphetamine – a salt of methamphetamine.  *See, e.g.*, *People v. Buchanan*, 204 Cal. Rptr. 3d 167, 170, 172 (Ct. App. 2016); *People v. Logan*, 2014 WL 971444, at *1–2 (Cal. Ct. App. Mar. 13, 2014); *People v. Serb*, 2012 WL 968082, at *2 (Cal. Ct. App. Mar. 22, 2012); *People v. Laufasa*, 115 Cal. Rptr. 3d 318, 319 (Ct. App. 2010); *People v. Vizcarrondo*, 2005 WL 2038215, at *1 (Cal. Ct. App. Aug. 25, 2005).

Indeed, charges may not allege the type of methamphetamine at issue unless a sentencing enhancement for crystal methamphetamine applies. California sentencing law provides that, "for an offense involving methamphetamine, the fact that the controlled substance is

the crystalline form of methamphetamine" constitutes an aggravating circumstance. Cal. Penal Code § 1170.74. Charges therefore may include a charge for a crime involving methamphetamine with a "special allegation," for sentencing purposes, that the substance is crystal methamphetamine. *See, e.g.*, *People v. Smith*, 2009 WL 808316, at \*1 (Cal. Ct. App. Mar. 30, 2009); *People v. Lawhorn*, 2008 WL 4412284, at \*1 (Cal. Ct. App. Sept. 30, 2008). The enhancement need not be proven for *conviction*, and it is not necessarily alleged in all cases involving crystal methamphetamine. *See, e.g.*, *People v. Shellock*, 2007 WL 1874329, at \*1 (Cal. Ct. App. June 29, 2007) (describing a methamphetamine conviction where the substance was crystal methamphetamine, but not mentioning the crystal methamphetamine enhancement); *People v. Belasquez*, 2006 WL 171520, at \*1 (Cal. Ct. App. Jan. 25, 2005) (same). State courts' practice in applying the sentencing enhancement shows that a conviction for "methamphetamine" may in fact be a conviction for a variant – in these instances, crystal methamphetamine.

In sum, California law demonstrates that optical and geometric isomers of methamphetamine are alternative means of committing a single controlled substance offense under California law. The government does not argue otherwise. The overly broad methamphetamine element, therefore, is not divisible. Because the California statute is overbroad and not divisible with respect to the overbroad element, we do not apply the modified categorical approach to determine whether Lorenzo's convictions involved a type of methamphetamine covered by the CSA. As a result, Lorenzo's convictions under §§ 11378 and 11379(a) do not qualify as controlled substance offenses under 8 U.S.C. § 1227(a)(2)(B)(i).

Because the IJ and the BIA did not consider whether Lorenzo was removable on the ground that his § 11379(a) conviction constitutes an "illicit trafficking in a controlled substance" aggravated felony under 8 U.S.C. §§ 1101(a)(43)(B) and 1227(a)(2)(A)(iii), we do not address that question. *See Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) ("In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency. If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case."). If the BIA addresses the government's aggravated felony theory on remand, it should consider whether that theory suffers from the same flaw as the government's theory of removability under 8 U.S.C. § 1227(a)(2)(B)(i).

**PETITION GRANTED; REMANDED.**