Filed 3/26/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re REYNA PEREZ HERNANDEZ<br><br>on Habeas Corpus. | G054623<br><br>(Super. Ct. No. 14CF4064)<br><br>O P I N I O N |

Original proceedings; petition for writ of habeas corpus.  Petition granted.

Munger, Tolles & Olson, Joseph D. Lee and Peter E. Gratzinger for Petitioner.

Dae Keun Kwon, Adrienna Wong and Jennifer Pasquarella for American Civil Liberties Union of Southern California, Immigrant Defense Project, Immigrant Legal Resource Center, and National Immigration Project of the National Lawyers Guild as Amici Curiae on behalf of Petitioner.

Gibson, Dunn & Crutcher, Eric D. Vandevelde, Jennifer E. Rosenberg, Jessica R. Culpepper and Daniel R. Adler for Former Prosecutors and Defenders as Amici Curiae on behalf of Petitioner.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Teresa Torreblanca, Deputy Attorneys General, for Respondent.

*      *      *

INTRODUCTION

We grant Reyna Perez Hernandez's petition for writ of habeas corpus seeking to have her conviction for possession of methamphetamine for the purpose of sale in violation of Health and Safety Code section 11378[1] vacated and the opportunity to withdraw her guilty plea. The record both shows her appointed trial counsel failed to advise her before she entered her guilty plea that her plea would subject her to mandatory deportation, and contains evidence, including contemporaneous objective evidence, she would not have entered her guilty plea had she been so advised. We publish this opinion because it discusses evidence establishing ineffective assistance of counsel, including prejudice, for failure to advise of mandatory deportation consequences attached to a guilty plea.

The parties agree the law is clear that at the time Hernandez entered her plea, and now, a conviction for violating section 11378 carries with it the penalty of mandatory deportation. When an immigration consequence is "truly clear, as it was in this case," Hernandez's trial counsel's duty to give correct advice "is equally clear." (*Padilla v. Kentucky* (2010) 559 U.S. 356, 375 (*Padilla*) [if a plea carries with it the consequence of mandatory deportation, counsel must so advise].) The record does not show that Hernandez's trial counsel informed her that her guilty plea would result in mandatory deportation.

---

[1] All further statutory references are to the Health and Safety Code unless otherwise specified.

Hernandez also established resultant prejudice. Hernandez, a legal permanent resident, has lived in the United States since she was three years old. She is the single parent of three minor children (their father has passed away) who are all citizens, one of whom has serious medical issues. She has been gainfully employed as a medical assistant. She had no prior criminal record other than traffic infractions. Shortly after she pleaded guilty and served 43 days in jail, she was taken into custody by federal immigration officials. Instead of signing the form presented to her stating her agreement to deportation, she refused to sign and remained in immigration custody for eight months before being released on bond. Her conduct shows a contemporaneous strong preference to remain in this country, albeit in custody, over a shorter criminal sentence and deportation. Our record does not show the case against Hernandez for possessing methamphetamine for sale was strong.

Hernandez's conviction is vacated and we remand to the trial court with directions to permit Hernandez to withdraw her guilty plea.

BACKGROUND

Hernandez was born in 1985. In 1988, she was brought to the United States from Mexico after her mother, who was her sole caretaker, passed away. Hernandez, along with her siblings, initially lived with her aunt, but she and her sisters were removed from their aunt's home and placed in foster care after they were abused by their aunt's husband. While living in foster care, on October 20, 2002, Hernandez became a lawful permanent resident of the United States. She has almost no family remaining in Mexico.

Hernandez has three minor children who are all citizens of the United States for whom she has acted as sole caretaker after their father passed away. Her youngest child has had serious medical problems, including epilepsy, that require special medical care.

## I.
### HERNANDEZ IS ARRESTED AND CHARGED WITH POSSESSION OF METHAMPHETAMINE FOR THE PURPOSE OF SALE.

According to the Tustin Police Department's "Suspect/Arrestee Report," on December 19, 2014, Hernandez was arrested for possession of methamphetamine for purpose of sale in violation of section 11378.

At the preliminary hearing, Hernandez was represented by attorney Michael Currier, who was appointed as Hernandez's trial counsel. Tustin Police Officer Matthew Roque testified that on December 19, 2014, at about 10:30 p.m., he and another officer were on routine patrol in a "high crime" area of Tustin when they drove down an alley and saw a man standing next to a white Mitsubishi Lancer. Hernandez was seated in the driver's seat of the car and the man who owned the car, later identified as Minera, and a woman were seated in the back seat of the car.

Roque directed Hernandez and the backseat passengers out of the car. Hernandez thereafter stood in front of the driver's side headlight. At some point, Roque noticed "near the area where she was standing" an empty baggie on the ground and a white crystalline powder on the ground near the baggie. Roque suspected the substance on the ground was methamphetamine in a usable amount; neither the empty baggie nor the white crystalline powder on the ground was tested. Roque did not testify about where the man he originally saw standing next to the car was in relation to the empty baggie, or where that man and the backseat passengers stood after he made contact with them. Roque never saw Hernandez, or any other person on the scene, in physical possession of any suspected contraband.

Roque's fellow officer searched the car. In the backseat armrest he found a small baggie (one inch by one inch in size) containing a substance that later tested

positive for methamphetamine. In the floorboard where Hernandez had been seated, he found a "replica firearm," and in the back of the driver's seat, "reach[ing] up into the seat," he found four additional baggies of methamphetamine, weighing .22, .22, .09, and .10 grams, respectively, and a methamphetamine smoking pipe.

Roque testified that in his training and experience, the amounts of methamphetamine contained in the baggies constituted a usable quantity. Roque also searched the trunk of the car where he found a functioning digital scale and several clear baggies, as well as two separate bindles of 9 millimeter ammunition. Hernandez was arrested. Roque testified that in his opinion, given the presence of several individually packaged baggies of methamphetamine, a digital scale, and a replica firearm and ammunition, which are all common tools used by drug traffickers, the possession of methamphetamine in this case was for sale.

Roque spoke with Hernandez at the Tustin police station after she had been read her rights under *Miranda*.[2] Hernandez told Roque she was the driver of the vehicle that night because she had a license and the owner of the car, Minera, who had been seated in the backseat of the car, told her that he and the other passenger were going to see a friend. Hernandez stated that, when they arrived, she saw Minera hand the man standing outside of the vehicle, identified in the record as Aguirre, "something out of the window." Hernandez stated she had known Minera for about a year and knew him to sell drugs and further stated she had "suspected that he was going to go there to sell drugs."

In her declaration filed in support of her petition for writ of habeas corpus, Hernandez stated: "On December 19, 2014, two acquaintances came to my house. I agreed to drive a car that belonged to one of them, German Miner[a], from my house in Garden Grove to Tustin. He asked me to drive the car because I was the only one with a driver's license, and he was worried about being pulled over driving on a Friday evening.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

Mr. Miner[a] had never asked me to drive his car before. I agreed to drive. When we arrived in Tustin, we were stopped by police and drugs were found inside and in the vicinity of the car. I was arrested for the first and only time in my life. Before that night I had never been in trouble with the law except for minor traffic violations."

## II.

### THE NEGOTIATED PLEA

In her declaration in support of her petition, Hernandez explained the following circumstances leading to her guilty plea for violating section 11378. She stated that Currier had informed her the prosecutor had proposed a deal in which she would plead guilty and serve no more than 90 days in jail, and less with good behavior. Currier told her that if she did not plead guilty and went to trial, she could go to jail for years. She stated Currier knew that she was concerned about being separated from her children, but he encouraged her to take the plea deal. Hernandez stated: "He never advised me that if I pled guilty, after I serve time in jail, I would be deported. He did not explain the disastrous consequences that pleading guilty would have for my status as a legal permanent resident. Based on Mr. Currier's advice, I accepted the deal that the District Attorney offered."

On July 12, 2015, Hernandez signed a *Tahl*[3] form in which she pleaded guilty to one count of possession of methamphetamine for sale in violation of section 11378. The *Tahl* form stated she faced a maximum prison term of up to three years. Hernandez initialed the paragraph on the form stating: "Immigration consequences: I understand that if I am not a citizen of the United States, my conviction for the offense charged will have the consequence of deportation, exclusion from admission to the United States, *or* denial of naturalization pursuant to the laws of the United States." (Italics added.)

---

[3] *In re Tahl* (1969) 1 Cal.3d 122.

She offered the following factual basis for her plea: "In Orange County, California, on 12-19-14 I willfully & unlawfully possessed a usable quantity of the controlled substance methamphetamine, knowing it was a controlled substance, for purpose of sale." Hernandez initialed the following paragraph: "I understand each and every one of the rights set forth above in this advisement and waiver of rights form. I waive and give up each of those rights in order to enter my guilty plea. I am entering a guilty plea because I am in fact guilty and for no other reason. I declare under penalty of perjury I have read, understood, and personally initialed each numbered item above, and I have discussed them with my attorney. I declare under penalty of perjury everything on this form is true and correct. I understand the signing and filing of this form is conclusive evidence I have pled guilty to the charges listed on this advisement and waiver of rights form." Below the paragraph, she signed and dated the *Tahl* form.

The *Tahl* form also contains Currier's signature below the "Defense Attorney's Statement," which reads: "I am the attorney of record for defendant. I have explained to defendant each of the rights set forth on this form. I have discussed the charges and the facts with defendant. I have studied the possible defenses to the charges and discussed those possible defenses with defendant. I have discussed the possible sentence ranges and immigration consequences with defendant. I also have discussed the contents of this form with defendant. I concur with defendant's decision to waive the rights set forth on this form and to plead guilty. No promises of a particular sentence or sentence recommendation have been made to defendant by me, or to my knowledge by the prosecuting attorney or the court, which have not been fully disclosed on this form. I agree that this form may be received by the court as evidence of defendant's advisement and voluntary, intelligent, knowing, and express waiver of the rights set forth on this form."

At the hearing on July 13, 2015, Currier asked the trial court to allow Hernandez to change her plea. The court responded: "Appears to be a negotiated

7

disposition.  And if the defendant pleads guilty, the deal is three years of supervised probation.  A condition of that probation is 90 days in the Orange County jail."  The court confirmed Hernandez's initials and signature on the *Tahl* form as follows:

"[The Court]:  I'm now going to discuss the felony.  Ms. Hernandez, this document that I have that's entitled Advisement and Waiver of Rights for a Felony Guilty Plea, this document, does it bear your initials and your signature?

"The Defendant:  Yes.

"The Court:  Did you read it?

"The Defendant:  Yes.

"The Court:  It contains your constitutional rights.  Do you understand that if you plead guilty—I'm sorry.  When you read those rights, did you understand them?

"The Defendant:  Yes.

"The Court:  All right.  Did you understand that if you plead guilty you will be giving up those rights?

"The Defendant:  Yes.

"The Court:  To the charge alleged in count 1, a violation of Health and Safety Code section 11378, how do you plead, guilty or not guilty?

"The Defendant:  Guilty.

"The Court:  Does counsel join in the plea and the waivers?

"[Defense counsel]:  Join, your honor.

"The Court:  All right.  The court makes the findings of a knowing, intelligent waiver of your constitutional rights, you understand the consequences of your plea, there's a factual basis for your plea.  The court will accept your plea."

The trial court suspended imposition of sentence and, pursuant to the negotiated disposition, placed Hernandez on three years' formal probation conditioned on, inter alia, her serving 90 days in the Orange County jail.  She was awarded credits totaling two days.  The negotiated disposition provided that Hernandez would be

8

remanded to the custody of the sheriff's department forthwith to serve her jail sentence; the court made that order accordingly. The transcript of the hearing does not support the entry in the court's minute order for that day that Hernandez was specifically "advised of the possible consequences of plea affecting deportation and citizenship."

In his declaration filed in connection with Hernandez's petition for writ of habeas corpus, Currier stated that he represented Hernandez before his recent retirement from practice. Currier declared he negotiated a deal with the prosecutor for Hernandez to plead guilty to one count of violating section 11378 for possession of methamphetamine for the purpose of sale and represented Hernandez at the July 13, 2015 hearing when she entered her guilty plea. Currier further stated he recalled it was the prosecutor who "proposed the above plea" and that Currier "did not discuss alternative pleas designed to avoid adverse immigration consequences with the District Attorney or with Ms. Salazar."[4] Currier also stated: "I do not recall discussing with the District Attorney or Ms. Salazar whether a conviction under Health & Safety Code § 11378 could affect her immigration status. I do not recall being aware of Ms. Salazar's immigration status or thinking that she could be deported."

### III.
### AFTER HERNANDEZ IS RELEASED FROM JAIL, SHE IS IMMEDIATELY TAKEN INTO CUSTODY BY FEDERAL IMMIGRATION AUTHORITIES AND SPENDS EIGHT MONTHS IN IMMIGRATION DETENTION.

On August 25, 2015, Hernandez was released from jail after serving 43 days in custody, having been provided two days of credit for time served and credit for good behavior. She was, however, immediately transferred to the custody of immigration officials at the Adelanto Detention Facility. Hernandez first learned she was going to be deported when immigration officers asked her to sign paperwork agreeing that she be deported; she refused and thereafter spent eight months in immigration

---

[4] In his declaration, Currier refers to Hernandez as "Reyna Salazar (n[é]e Perez Hernandez)" and as "Ms. Salazar."

detention. She did not have a lawyer but planned to fight deportation. In April 2016, she retained pro bono counsel, obtained a bond hearing, and was released on the minimum bond of $1,500. After she was released from immigration detention, she resumed her work as a medical assistant and began efforts to regain custody of her children who had been placed with her cousin as a foster parent during her detention.[5]

IV.

HERNANDEZ FILES A PETITION FOR WRIT OF HABEAS CORPUS IN THE TRIAL COURT; THE COURT DENIES THE PETITION.

On September 21, 2016, Hernandez filed a petition for writ of habeas corpus in the trial court alleging she received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution on the grounds Currier failed to (1) inquire about her immigration status (lawful permanent resident); (2) advise her of the immigration consequences of her guilty plea (mandatory deportation); (3) identify an immigration-neutral alternative equivalent disposition; and (4) attempt to negotiate a plea agreement that would have allowed her to secure an immigration-neutral result.

In her declaration filed in support of the petition, Hernandez stated: "Remaining in the United States with my young children was the most important consideration for me. I would have willingly served additional jail time if it meant I would have the opportunity to remain here with my children. I would never have accepted the plea deal offered to me, had I known that it would result in my deportation." She also stated: "The consequences of permanent deportation and banishment as a result of my conviction are devastating to me. I respectfully request the court to consider granting a dismissal order, with or without a replacement conviction that will not cause

---

[5] In her supplemental declaration, Hernandez stated she now has full custody of her three young children.

10

me to be removed from the United States.  I am willing to serve additional jail time if necessary.  I will do anything that allows me to remain with my children here."

In addition to her declaration and Currier's declaration, Hernandez's petition was supported by the declaration of Katherine Brady, senior staff attorney at the Immigration Resource Center.  Brady stated that Hernandez pleaded guilty to an offense that is classified as an aggravated felony under title 8 United States Code section 1101(a)(43)(B) which "carries the worst of all possible immigration consequences, including mandatory immigration detention."  Brady further stated that because of the nature of the offense for which Hernandez was convicted, "an Immigration Judge would have no discretion even to consider Ms. Perez Hernandez's equities such as her long residence in the United States since a very young age, her extensive family ties, good work history, absence of any previous criminal record, or the effect of Ms. Perez Hernandez's deportation on her family."

Brady declared that immigration-safe alternatives were available to Hernandez in this case and that Brady would "have strongly advised defense counsel to negotiate a non-deportable alternative, such as pleading 'up' to offering to distribute or even sell an unspecified 'controlled substance,' under Health & Safety Code § 11379(a)."  She explained, "By 'pleading up' I mean pleading guilty to an offense that carries greater criminal penalties under California law, but carrying fewer or no federal immigration consequences.  Because the California drug schedules contain substances not contained in the federal schedules, and the federal schedules are the ones used for immigration purpose[s], a plea to an offense in 11379(a) involving an unspecified controlled substance is not a deportable controlled substance offense or a deportable or inadmissible aggravated felony.  This well-established defense strategy has been available from 1965 to present."  Citing *People v. Bautista* (2004) 115 Cal.App.4th 229, 238, Brady noted "[t]he strategy of 'pleading up' is so well-known that the failure to consider this alternative has been held to support a claim of ineffective assistance of counsel."  She

11

further stated: "In my experience, defense attorneys, including those in Orange County, are able to successfully negotiate a plea to H&S 11379 involving a nonspecified controlled substance, because the conviction carries a greater criminal consequence." She added: "Another alternative would have been a plea to accessory after the fact, under Penal Code § 32."

Our record also contains the declaration of J. Conrad Schroeder, the deputy district attorney who handled Hernandez's case in the trial court and agreed to the plea deal with Currier. In his declaration, Schroeder stated: (1) he has no memory of discussing alternative pleas designed to avoid adverse immigration consequences with either Currier or Hernandez; (2) it has never been his custom or practice to offer defendants or otherwise agree to alternative pleas designed to avoid adverse immigration consequences; (3) "[i]n light of the facts of this case and the strength of the evidence, [he] would not expect any prosecutor in [his] office to accept a plea to either a violation of Health and Safety Code section 11379 involving a nonspecified controlled substance or to being an accessory after the fact under Penal Code section 32, in order to assist [Hernandez] in avoiding the immigration consequences of her plea;" and (4) "[t]here were no factors in [Hernandez]'s case that would lead a reasonable prosecutor to believe that the avoidance of adverse immigration consequences in the plea would serve the interest of justice."[6]

The trial court did not hold an evidentiary hearing before it denied the petition. The transcript of the hearing on the change of plea was not presented to the trial court.

---

[6] Months after Hernandez's guilty plea, Penal Code section 1016.3, subdivision (b) became effective on January 1, 2016 and provides: "The prosecution, in the interests of justice, and in furtherance of the findings and declarations of Section 1016.2, shall consider the avoidance of adverse immigration consequences in the plea negotiation process as one factor in an effort to reach a just resolution."

12

V.

HERNANDEZ FILES A PETITION FOR WRIT OF HABEAS CORPUS IN THIS COURT.

In early 2017, Hernandez filed a petition for writ of habeas corpus in this court in which she makes the same arguments she had made in the trial court. We issued an order to show cause directing respondent to file a return.

DISCUSSION

I.

THE PETITION FOR WRIT OF HABEAS CORPUS IS NOT MOOT.

During the pendency of these proceedings, in a letter filed in this court, Hernandez's appellate counsel informed us that on October 15, 2018, Hernandez's removal proceedings were terminated, without prejudice, based on *Lorenzo v. Sessions* (9th Cir. 2018) 902 F.3d 930 (*Lorenzo*). In *Lorenzo*, the Ninth Circuit found that a conviction for possession of methamphetamine for the purpose of sale under section 11378 is not a deportable controlled substance offense within the meaning of section 237(a)(2)(B)(i) of the Immigration and Naturalization Act (8 U.S.C. § 1227(a)(2)(B)(i)). We issued an order directing the parties to file letter briefs addressing, inter alia, whether this matter is moot given the holding of *Lorenzo* and the dismissal without prejudice of the deportation proceedings against Hernandez.

Both parties filed letter briefs and agreed this matter is not moot. In his letter brief, the Attorney General explained: "The Ninth Circuit's decision in *Lorenzo v. Sessions* was withdrawn on January 17, 2019, and an unpublished memorandum was filed in its place. (*Lorenzo v. Whitaker* (No. 15-7814, Jan. 17, 2019) 2019 WL 238777 __ F.3d __.)" That unpublished memorandum, under Ninth Circuit Rule 36-3, does not constitute precedent. Consequently, as explained by the Attorney General, the Ninth Circuit's recent decisions in this area do not affect Hernandez's ineffective of assistance

13

of counsel claim and do not otherwise render this proceeding moot. As the current state of the law appears to again be uniform in providing that a violation of section 11378 subjects the violator to mandatory deportation, this matter is not moot.

We further observe that, in her petition, Hernandez states her three-year probation period was scheduled to expire in July 2018. Our record does not show whether Hernandez has completed her probation. Even if Hernandez has since been released from probation, her petition is not rendered moot because she was in custody at the time the habeas corpus petition was filed. When a petitioner is in custody at the time the petition is filed, the petitioner's later discharge does not deprive the trial court of jurisdiction because, once acquired, the court's jurisdiction continues throughout the proceeding and any appeals. (See *Carafas v. LaVallee* (1968) 391 U.S. 234, 239-240; *Chaker v. Crogan* (9th Cir. 2005) 428 F.3d 1215, 1219.)

In *People v. Villa* (2009) 45 Cal.4th 1063, 1069, the California Supreme Court analyzed how the custody requirement for habeas corpus relief in California courts has become "somewhat relaxed" to provide, for example, that a sentence of a "fine *or* imprisonment" could be sufficient to meet the custody requirement for habeas corpus relief. Our Supreme Court further noted that "[h]abeas corpus practice in the federal courts has generally followed this trend" of applying a more relaxed custody standard, citing, inter alia, *Carafas v. LaVallee, supra,* 234 U.S. at pages 238-241 as an example in which the United States Supreme Court found the "custody requirement satisfied although the petitioner was unconditionally released before completion of proceedings on his habeas corpus petition." (*People v. Villa, supra,* 45 Cal.4th at pp. 1069-1070.)

As we conclude Hernandez's petition is not moot, we proceed to address the merits of her petition.

II.

STANDARD OF REVIEW

14

As noted *ante*, Hernandez previously filed a petition for writ of habeas corpus which the trial court summarily denied, without an evidentiary hearing. The pending petition for writ of habeas corpus in this court is, therefore, an original proceeding in which we independently review the record. (*In re Scott* (2004) 119 Cal.App.4th 871, 877, 884.) The instant petition is based on Hernandez's contention she was never advised by trial counsel that her guilty plea would result in mandatory deportation. The parties agree there is no evidence in the record showing Hernandez was advised her plea would result in mandatory deportation. As our ruling on the petition does not depend on the resolution of any disputed issues of fact in the record, an evidentiary hearing is unwarranted. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 675.)

III.

APPLICABLE LEGAL STANDARDS

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." (*Lee v. United States* (2017) __ U.S. __ [137 S.Ct. 1958, 1964] (*Lee*).) A claim for ineffective assistance of counsel may be asserted in a petition for writ of habeas corpus. (*People v. Pope* (1979) 23 Cal.3d 412, 426, overruled on other grounds in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10, overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1.)

""""In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it 'fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms.' [Citations.] Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of

15

counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"'" (*People v. Salcido* (2008) 44 Cal.4th 93, 170.)

IV.

HERNANDEZ ESTABLISHED HER TRIAL COUNSEL PROVIDED DEFICIENT REPRESENTATION.

In her petition for writ of habeas corpus, Hernandez contends Currier provided deficient representation at the time she pleaded guilty by failing to (1) determine her immigration status, (2) advise her that pleading guilty to a violation of section 11378 would result in her mandatory deportation, and (3) investigate and attempt to negotiate an immigration-neutral alternative to the plea deal proposed by the deputy district attorney. For all of the following reasons, we agree Hernandez has established she received deficient representation within the meaning of the right to counsel under the Sixth Amendment to the United States Constitution.

The Attorney General and Hernandez agree the law was clear, both at the time Hernandez was sentenced and now, a conviction for violating section 11378 carries with it the consequence of mandatory deportation under federal law.

In *Padilla, supra,* 559 U.S. at page 370, the United States Supreme Court held that a criminal defense counsel's Sixth Amendment obligations include properly advising as to the immigration consequences of a guilty or no contest plea. The court acknowledged that federal immigration law is often complex and that, in some cases, the likelihood of deportation as a consequence of a conviction is neither clear nor certain. (*Id.* at p. 369.) In those cases, the court held, the most the Sixth Amendment may require of defense counsel concerning immigration consequences is a warning that a criminal

16

conviction "'may' have adverse immigration consequences." (*People v. Patterson* (2017) 2 Cal.5th 885, 897-898 (*Patterson*), quoting *Padilla, supra,* 559 U.S. at p. 898.)

However, when, as was the case in *Padilla*, federal immigration law specifies in "succinct, clear, and explicit" terms that a conviction will result in deportation, the criminal defense attorney's duty to "give correct advice is equally clear" (*Padilla, supra,* 559 U.S. at pp. 368-369) and "a criminal defense attorney must accurately advise his or her client of that consequence before the client enters a guilty plea" (*Patterson, supra,* 2 Cal.5th at p. 898). Applying *Padilla, supra,* 559 U.S. 356, the California Supreme Court in *Patterson* stated that "[t]he generic advisement under [Penal Code] section 1016.5 is not designed, nor does it operate, as a substitute for such advice." (*Patterson, supra,* 2 Cal.5th at p. 898.)[7]

There is no dispute here that the crime to which Hernandez pleaded guilty, possession of methamphetamine in violation of section 11378, subjected her to mandatory deportation. Currier was therefore obligated under *Padilla* to advise her, before she pleaded guilty, of that specific consequence. Hernandez stated in her declarations that Currier did not so advise her. True, Hernandez initialed the paragraph on the *Tahl* form stating she understood that if she were not a citizen, her "conviction for the offense charged will have the consequence of deportation, exclusion from admission to the United States, *or* denial of naturalization pursuant to the laws of the United States." (Italics added.) The *Tahl* form, however, did not advise that her specific plea would result in mandatory deportation. Although the *Tahl* form contains the word "will" and not "may," it, standing alone, is akin to the "generic advisement" required of the court

---

[7] Penal Code section 1016.5, subdivision (a) requires that the trial court shall administer the following advisement on the record to the defendant before accepting a plea of guilty or nolo contendere: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

17

under Penal Code section 1016.5, subdivision (a) addressed in *Patterson, supra,* 2 Cal.5th at page 898, and it similarly "is not designed, nor does it operate, as a substitute for such advice" of defense counsel regarding the applicable immigration consequences in a given case. (*Ibid.*)

Although Currier signed the same *Tahl* form, attesting generally that he had "discussed the possible sentence ranges and immigration consequences with [Hernandez]," his *Tahl* form statement does not show that he was aware, and so advised Hernandez, that she faced mandatory deportation if she pleaded guilty to the charged offense. In his declaration, Currier stated he did not recall discussing whether a conviction under section 11378 "could affect her immigration status" at all. He did not recall even "being aware of [Hernandez]'s immigration status" and stated he did not recall "thinking that she could be deported." Conspicuously absent from Currier's declaration is any statement regarding any custom or practice he had of discerning the immigration status of his clients, researching the actual and possible immigration consequences they faced if they were to enter a guilty plea, and advising his clients of such consequences before they pleaded guilty to an offense. Currier's statements in and omissions from in his declaration strongly support the conclusion that, as attested to by Hernandez, Currier never advised Hernandez that she would be subject to mandatory deportation as a result of pleading guilty to a violation of section 11378. There is no contrary evidence in our record. Thus, even if Currier had a usual custom and practice of inquiring into his clients' immigration status, confirming the nature of any specific immigration consequences facing them, and advising of specific immigration consequences before pleading guilty to any particular crimes, there is no evidence he followed it in this case.

Furthermore, nothing in our record shows Hernandez was otherwise on notice of the mandatory deportation consequence she faced. Prosecutor Schroeder's declaration is silent as to any discussion of immigration consequences in his presence.

18

We note that the trial court's minutes from the hearing at which Hernandez pleaded guilty suggest the trial court advised Hernandez of "the possible consequences of plea affecting deportation and citizenship." But the transcript from that hearing (included in our record) shows the issue of immigration consequences was not raised by the court or anyone else at that hearing.[8]

Hernandez has therefore established that Currier, by failing to advise her of the mandatory deportation consequence of her guilty plea, rendered deficient representation. We therefore do not need to address whether Currier's representation was also deficient due to his failure to attempt to negotiate an alternative plea deal that did not have immigration consequences.

## V.
### HERNANDEZ ESTABLISHED RESULTING PREJUDICE.

In the context of an ineffective assistance of counsel claim, "[t]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citation.] '[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."' [Citation.] The probability of obtaining a more favorable result at trial is one factor to consider in evaluating prejudice, but it is not necessarily the determinative factor." (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78.)

In *Lee, supra,* __ U.S. at page __ [137 S.Ct. at p. 1966], the United States Supreme Court stated that courts determine prejudice on a case-by-case basis in light of

---

[8] The trial court had to rely on the minutes because no party presented the court with a transcript of the hearing at which Hernandez pleaded guilty.

all the circumstances.  In the context of a guilty plea involving immigration consequences, the *Lee* court explained that courts must consider the likelihood of success at trial, the potential consequences after trial compared to the consequences flowing from the guilty plea, and the importance of immigration consequences to the defendant.  (*Id.* at p. __ [137 S.Ct. at pp. 1966-1967].)  In that case, the United States Supreme Court observed it could be reasonably probable that a defendant "would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial," where "avoiding deportation was *the* determinative factor for [the defendant]." (*Id.* at p. ___ [137 S.Ct. at p. 1967].)  The court cautioned, however, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges *should instead look to* contemporaneous evidence to substantiate a defendant's expressed preferences." (*Ibid.,* italics added.)

Here, Hernandez demonstrated a reasonable probability she would not have pleaded guilty to the section 11378 offense had she been advised by her counsel she thereafter would be subjected to mandatory deportation.  The prejudice Hernandez suffered as a result of her counsel's deficient performance is shown by her unequivocal and uncontradicted statements in her declaration that she would not have pleaded guilty had she known of the immigration consequences she faced by pleading guilty.  It is supported by the evidence she has lived in this country since the age of three, has three minor children who are citizens, one of whom has serious health issues, has been gainfully employed as a medical assistant, and had lawful permanent residence status at the time of her plea.

In "look[ing] to contemporaneous evidence to substantiate [Hernandez]'s expressed preferences" (*Lee, supra,* __ U.S. at p. __ [137 S.Ct. at p. 1967]),[9] it is undisputed that a short time after she pleaded guilty, Hernandez chose to remain in federal custody to fight deportation. Her conduct constitutes contemporaneous evidence of her strong preference to remain in this country, albeit in custody, over serving less time for a criminal offense. (*Ibid.*) Hernandez served 43 days in jail following the hearing at which she entered her guilty plea and was sentenced to probation when, to her surprise, she was immediately taken into custody by immigration officials. About 43 days after she signed the *Tahl* form, she refused to sign the form authorizing her deportation, determined to fight her deportation from and exclusion from admission to the United States. Her recalcitrance resulted in her remaining in the custody of immigration officials for eight months before she was released on bond.

Furthermore, our record does not show that had she gone to trial, Hernandez's conviction for violating section 11378 was a foregone conclusion. She did not own the car in which the methamphetamine, pipe, digital scale, and other items were found. She was not found in physical possession of methamphetamine or drug paraphernalia. There is no evidence in the record she has ever been charged with anything other than a traffic infraction before the instant offense. The record does not show she had any relationship with the other two occupants of the car other than that of

_____

[9] We observe that the United States Supreme Court in *Lee, supra,* __ U.S. at page __ [137 S.Ct. at p. 1967] instructed that judges *should* look to contemporaneous evidence to substantiate a defendant's expressed preferences. Therefore, under *Lee*, a court may find prejudice based on the totality of the circumstances and evidence, including credibility determinations, that would support such a finding without contemporaneous evidence. (See *People v. Martinez* (2013) 57 Cal.4th 555, 565 ["the defendant bears the burden of establishing prejudice" and in the case of a plea bargain, "must provide a declaration or testimony stating that he or she would not have entered into the plea bargain if properly advised. It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances"].)

acquaintance. Our record shows it is reasonably probable that she may have been convicted of another charge (without mandatory deportation consequences) or acquitted of the charged offense altogether.

Hernandez's claim that she would not have pleaded guilty had she known it would lead to deportation "is backed by substantial and uncontroverted evidence." (*Lee, supra,* __ U.S. at p. __ [137 S.Ct. at p. 1969].) She has therefore established a reasonable probability that, but for her counsel's failure to advise of the mandatory deportation consequence, she "'would not have pleaded guilty and would have insisted on going to trial.'" (*Ibid.*)

Our conclusion that Hernandez's constitutional right to the effective assistance of counsel was violated is consistent with the holding of *People v. Espinoza* (2018) 27 Cal.App.5th 908, 916, in which the appellate court recently concluded that an attorney's "bare advisement" that the defendant "could be deported" for pleading guilty to a violation of section 11378 was constitutionally insufficient. Reversing the trial court's order denying the defendant's motion to vacate his conviction, the appellate court stated: "The evidence clearly showed [the attorney] did not explain that pleading guilty to violating Health and Safety Code section 11378 meant certain deportation unless defendant could prove that he would be tortured in his home country." (*People v. Espinoza, supra,* 27 Cal.App.5th at p. 916.)

DISPOSITION

We grant the petition for writ of habeas corpus. Hernandez's conviction is vacated. This matter is remanded to the trial court with directions to allow Hernandez to withdraw her guilty plea and enter a new plea.

Pursuant to Business and Professions Code section 6086.7, subdivision (a)(2), the clerk of this court is ordered to forward a copy of this opinion to the State Bar for investigation of Michael F. Currier upon return of the remittitur. At the same time, pursuant to Business and Professions Code section 6086.7, subdivision (b), the clerk of this court shall also notify Mr. Currier that the matter has been referred to the State Bar.

FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

23